

**U.S. Department of Justice**

Northern District of Iowa

*401 First Street S.E.*

United States Attorney

right
*Suite 400*
*Cedar Rapids, Iowa 52401-1825*
*(319) 363-6333*
*FAX (319) 363-1990*
*TTY (319) 286-9258*

January 10, 2009

<u>SENT VIA E-MAIL</u>

Leon F. Spies
312 E. College Street, Suite 216
Iowa City, Iowa 52240
Phone (319) 337-4193
Fax (319) 337-2396
spieslegal@aol.com

> Re:  *United States v. Medical Web Services*, Case No. CR 08-1318

Dear Mr. Spies:

This letter will serve as a memorandum of an AMENDED proposed plea agreement between the United States Attorney's Office for the Northern District of Iowa and Medical Web Services, defendant. All references to "defendant," "Medical Web Services," or "MWS" in this proposed agreement refer to the corporation Medical Web Services and to no other individual or entity. All references to the "United States" or "government" in this proposed plea agreement refer to the United States Attorney's Office for the Northern District of Iowa and to no other governmental entity.

**CHARGES AND PENALTIES**

1. ___Defendant will plead guilty to Count 1 of the August 6, 2008, Indictment pending in Case No. CR 08-1318, which charges a conspiracy to dispense and cause to be dispensed Schedule III and IV controlled substances outside of the usual course of professional practice and without legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), 841(b)(1)(D)(2), and 846. Defendant understands that Count 1 is punishable by the following maximum penalties: (1) a term of probation of 1 to 5 years; (2) a fine of up to $1,000,000; (3) and a mandatory special assessment of $400. Defendant also agrees to the entry of a $41,446,434.81 judgment of forfeiture pursuant to the forfeiture allegation included in August 6, 2008, Indictment.



GOVERNMENT
EXHIBIT

08-1318

blue
Case 2:08-cr-01318-LRR-JSS   Document 127-2   Filed 05/05/09   Page 1 of 17

2. ⟋⟋ Defendant agrees that this agreement will be executed by each Medical Web Services authorized corporate officer: Luis Teran, Brian Podolak, Thomas Mouradian, and Christopher HoSang (hereafter "the MWS Officers"). Defendant agrees that the MWS Officers have the full legal right, power and authority to enter into and perform all of defendant's obligations under this agreement and defendant agrees to abide by all terms and obligations of this agreement as described herein.

3. ⟋⟋ Defendant's guilty plea will be tendered personally by at least one of the MWS Officers, pursuant to appropriate corporate resolutions authorizing entry of a guilty plea in accordance with this agreement. In return, the U.S. Attorney agrees not to bring any additional criminal charges against defendant based upon information currently in the U.S. Attorney's possession, or information provided pursuant to the "Cooperation" section set forth in the attached pre-trial diversion agreements. This offer is contingent upon each and every MWS Officer entering into agreements for pretrial diversion with the United States Attorney's Office for the Northern District of Iowa.

4. ⟋⟋ Defendant agrees Medical Web Services is currently defunct. Defendant agrees not to sell, or resume business operations for, Medical Web Services. Defendant agrees not to sell, lease, or otherwise transfer ownership or rights to, any web domain affiliated with Medical Web Services operation.

5. ⟋⟋ Defendant also understands that the U.S. Sentencing Guidelines will provide advisory guidance to the Court in determining a sentence in this case.

6 ⟋⟋ Defendant understands and agrees it has the absolute right to plead guilty before a United States District Court Judge. However, if convenient to the Court, defendant agrees to waive and give up this right and to plead guilty before a United States Magistrate Judge. Defendant understands it will not be found guilty unless the United States District Court Judge accepts the plea of guilty or adopts a recommendation of the Magistrate Judge to accept such plea. Defendant agrees to execute the attached consent to proceed before the United States Magistrate Judge. Defendant agrees that even if it enters a guilty plea before the United States Magistrate Judge, it will be sentenced by a United States District Court Judge.

## SENTENCING PROVISIONS

7. ⟋⟋ The United States makes no promises as to the sentence to be imposed. Defendant understands and agrees to be sentenced based on facts to be found by the sentencing judge by a preponderance of the evidence and agrees facts essential to the punishment need not be (1) charged in the indictment; (2) proven to a jury; or (3) proven beyond a reasonable doubt. Defendant agrees the district court will determine the appropriate sentence after considering a variety of factors, including: (1) the nature and circumstances of the offense and the history and characteristics of defendant; (2) the need for the sentence imposed to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence to afford adequate deterrence to criminal conduct; (4) the need for the sentence to protect the public from further crimes of defendant; and (5) the need for the sentence to provide defendant with needed training or care in the most effective manner; (6) the need to avoid unwarranted sentencing disparities among defendants with similar criminal records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. Defendant understands that the Court will also consider the kinds of sentence and the sentencing range established by the United States Sentencing Guidelines for the applicable category of offense(s) committed by defendant and will consider any pertinent policy statements issued as part of the Guidelines. The Court will consider relevant adjustments under the United States Sentencing Guidelines. The Court may also consider other information including any information concerning the background, character, and conduct of defendant.

8. _____ During plea negotiations the parties may have discussed how various factors could impact the Court's sentencing decision and the determination of the advisory sentencing guidelines range. The parties agree, however, that discussions did not result in any express or implied promise or guarantee concerning the actual sentence to be imposed by the Court. Defendant further understands that it will have no right to withdraw its guilty plea if the sentence imposed is other than hoped for or anticipated.

9. _____ The parties stipulate and agree as to the following matters:

A. **Criminal Purpose Organization:** Pursuant to USSG §8C1.1, the parties agree defendant's organization operated primarily for a criminal purpose or primarily by criminal means. The parties agree the organization's net assets exceed the $1,000,000 maximum statutory fine provided by 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(D). Therefore, pursuant to USSG §8C2.10 and §8C3.2(a), the parties agree a fine of $1,000,000 must be imposed, with immediate payment of the fine required at the time of sentencing.

B. **Imposition of a Sentence of Probation:** If defendant is sentenced to pay a monetary penalty, and that penalty is not paid in full at the time of sentencing, pursuant to USSG §8D1.1(a)(2), defendant acknowledges the Court may find a term of probation necessary to safeguard the organization's ability to make payments. As outlined in USSG §8D1.2(a)(1), defendant understands this term of probation may be anywhere between one year and five years in length.

10. _____ Defendant, its attorney and the United States may make whatever comment and evidentiary offer they deem appropriate at the time of the guilty plea, sentencing or any other proceeding related to this case, so long as the offer or comment does not violate any other provision of this agreement. The parties are also free to provide all relevant information to the probation office for use in preparing the presentence report.

## FINANCIAL MATTERS

11. _____ Defendant agrees to pay a special assessment of $400 as required by 18 U.S.C. § 3013. Using the enclosed payment coupon, defendant or its representative will send or deliver the special assessment payment to the U.S. District Clerk of Court, 4200 C Street SW, Cedar Rapids, IA 52404. Payment must be in the form of a money order made out to the "U.S. District Clerk of Court." The special assessment must be paid before this signed agreement is returned to the U.S. Attorney's Office.

## FORFEITURE

12. _____ Defendant agrees to the entry of a judgment of forfeiture against it pursuant to the forfeiture allegation included in the Indictment filed August 6, 2008. Specifically, defendant agrees to forfeit $41,446,434.81 to the United States as the proceeds involved in the drug trafficking activities.

13. _____ Defendant agrees to forfeit and abandon any and all claim to items seized by law enforcement during the course of this investigation. Defendant understands that from this date forward any local, state, or federal law enforcement agency may take custody of and use, dispose, and transfer these items in any way the agency deems appropriate.

14. _____ Defendant agrees to voluntarily disclose, forfeit, abandon, give up, and give away to the United States, or any law enforcement agency designated by the United States, prior to the date of sentencing herein, any right, title and interest which defendant may have in the following items:

Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 21, United States Code, Section 846, including, but not limited to, the following:

Defendant agrees to withdraw any objection to the civil seizure of all monies seized in 2004 as part of the investigation of Medical Web Services and its related businesses and associates, including the following specific seizures:

| Account Holder | Amount Seized | Bank Acct. # | Dated Seized |
|---|---|---|---|
| BLTC Holdings | $197,350.19 | Bank of America #005493965757 | 07/15/04 |

| Account Holder | Amount Seized | Bank Acct. # | Dated Seized |
|---|---|---|---|
| My Technology | $107,919.58 | Bank of America #005483978916 | 07/15/04 |
| Teran Enterprises | $180,095.00 | Bank of America #005483978848 | 07/15/04 |
| Total Ventures | $146,029.54 | Bank of America #005483978877 | 07/15/04 |
| Podolak Group | $92,299.86 | Bank of America #005483977454 | 07/15/04 |
| MWS, LLC (Reserve Acct) | $17,025.00 | Bank of America #005483977797 | 05/20/04 |
| MWS, LLC (DPI Merchant Acct) | $388.63 | Bank of America #005489965583 | 05/20/04 |
| MWS, LLC (Market Acct) | $6,011.76 | Bank of America #005483977438 | 05/20/04 |
| MWS, LLC (Marketing New) | $4,043.89 | Bank of America #005486838590 | 05/20/04 |
| MMS, LLC (Payroll Acct) | $630.49 | Bank of America #003447887045 | 05/20/04 |
| MWS, LLC (Full Analysis Business Cking) | $233,664.85 | Bank of America #005483976086 | 05/20/04 & 07/15/04 |

Defendant agrees to sign and return the enclosed consent decrees permitting the civil forfeiture of these funds within 10 days of the date of this agreement.

15.  Specifically, the forfeiture provisions of this plea agreement also require, but are not limited to, the forfeiture of the following specified items:

$41,446,434.81 in United States dollars reflecting the proceeds of drug trafficking activity, minus the value of any items specifically listed in paragraph 14, above, which are successfully forfeited.

16.  If any of the property described in the above paragraphs as a result of any act or omission of defendant –

A.  cannot be located upon the exercise of due diligence;

B.  has been transferred or sold to, or deposited with, a third party;

C.  has been placed beyond the jurisdiction of the Court;

D.  has been substantially diminished in value; or

E.  has been commingled with other property which cannot be divided without difficulty;

defendant shall, prior to sentencing, provide payment to the government by cashier's or certified check up to the value of such property, unless other arrangements are made with the United States. Alternatively, defendant shall consent to an order of forfeiture of any other property up to the value of any such property.

17.  Within two weeks of signing this agreement, defendant agrees to provide the United States Attorney's Office for the Northern District of Iowa with written documentation of defendant's ownership or right, title or interest, in the aforementioned property. In the event defendant is unable to provide documentation of defendant's right, title or interest in such property within two weeks of signing this agreement, defendant shall relinquish custody of that property to the United States at that time, or at any subsequent time agreed to by the United States, upon demand of the government.

18.  By this agreement defendant not only agrees to forfeit all interests in the property referred to in the above paragraphs, but agrees to take whatever steps are necessary to convey any and all of defendant's right, title and interest in such property to the United States. These steps include but are not limited to the surrender of title, the signing of a quit claim deed, the signing of a consent decree, the signing of abandonment papers, the signing of a stipulation of facts regarding the transfer and basis for the forfeiture and the signing any other documents necessary to effectuate such transfers. Defendant further agrees to fully assist the government in the recovery

and return to the United States of any assets or portions thereof as described above wherever located. Defendant further agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. Defendant agrees to take all steps to locate property and to pass title to the United States, or any law enforcement agency designated by the United States, before defendant's sentencing.

19. _____ Defendant hereby agrees not to waste, sell, dispose of or otherwise diminish the value of any items or property referred to in the above paragraphs or allow others to do so. Defendant further agrees not to contest any forfeiture action or proceeding which seeks to forfeit property described in the above paragraphs.

20. _____ Defendant agrees and understand that should defendant fail to truthfully account for all of defendant's holdings, proceeds, assets or income, whether derived from a legal source or not, for the period charged in the indictment, defendant shall be deemed to have materially breached this agreement. The decision as to whether defendant has been complete, forthright and truthful in this regard shall be in the sole discretion of the United States Attorney, taking into consideration the totality of the circumstances and the totality of the evidence developed in the course of the investigation.

## GENERAL MATTERS

21. _____ Defendant shall not violate any local, state or federal law during the pendency of this agreement. Any law violation committed by defendant will constitute a breach of this agreement and may result in the revocation of the entire agreement or any of its terms. Defendant or its attorney shall notify this office within 48 hours if defendant is questioned or charged with any law violation.

22. _____ If defendant violates **any** term or condition of this plea agreement, in **any** respect, the entire agreement will be deemed to have been breached and may be rendered null and void by the United States. Defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. These decisions shall be in the sole discretion of the United States. If defendant does breach this agreement, it faces the following consequences: (1) all testimony and other information defendant has provided at any time (including any stipulations in this agreement) to attorneys, employees or law enforcement officers of the government, to the Court, or to the federal grand jury, may and will be used against defendant in any prosecution or proceeding; (2) the United States will be entitled to pursue additional charges against defendant, and to use any information obtained directly or indirectly from defendant in those additional prosecutions; and (3) the United States will be released from any obligations, agreements or restrictions imposed upon it under this plea agreement.

23. ⟋⟍___Defendant waives all claims it may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment to the Constitution. Defendant also agrees that any delay between the signing of this agreement and the final disposition of this case constitutes excludable time under 18 U.S.C. § 3161 *et seq.* (the Speedy Trial Act) and related provisions.

24. ⟋⟍___ Any agreement to forego filing charges is conditional upon final resolution of this matter. If this agreement is revoked or defendant's conviction is ultimately overturned, the United States retains the right to reinstate previously dismissed counts and to file charges which were not filed because of this agreement. Dismissed counts may be reinstated and uncharged offenses may be filed if: (1) the plea agreement is revoked, or (2) defendant successfully challenges its conviction through a final order in any appeal, cross-appeal, habeas corpus action or other post-conviction relief matter. A final order is an order not subject to further review or an order which no party challenges. The United States may reinstate any dismissed counts or file any uncharged offenses within 90 days of the filing date of the final order. Defendant waives all constitutional and statutory speedy trial rights it may have. Defendant also waives all statute of limitations or other objections or defenses it may have related to the timing or timeliness of the filing or prosecution of charges referred to in this paragraph.

## STIPULATION OF FACTS

25.     By initialing each of the following paragraphs, defendant stipulates to the following facts. Defendant agrees these facts are true and may be used to establish a factual basis for the guilty plea and sentence. Defendant has been advised by an attorney of its rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Defendant waives these rights and agree this stipulation may be used against defendant at any time in any proceeding should defendant violate or refuse to follow through on this plea agreement, regardless of whether the plea agreement has been accepted by the district court. Defendant and each MWS Officer agree that the stipulation below is a summary of the facts and does not constitute all of the facts the government would be able to prove at trial and may be able to prove to the Court in accordance with this agreement.

⟋⟍___A.     Between about June 2002 and continuing until about May 20, 2004, defendant Medical Web Services, and other persons and entities, reached an agreement or came to an understanding to unlawfully dispense and cause to be dispensed Schedule III and Schedule IV controlled substances. Defendant voluntarily and intentionally joined in the agreement or understanding to dispense and cause to be dispensed Schedule III and Schedule IV controlled substances outside the usual course of medical practice and with deliberate ignorance as to whether

Case 2:08-cr-01318-LRR-JSS   Document 127-2   Filed 05/05/09   Page 8 of 17

there was a legitimate purpose for the controlled substances, at the time it was first reached, or at some later time while it was still in effect. At the time defendant joined the agreement or understanding, defendant knew the purpose of the agreement and understanding.

B.  Pursuant to the conspiracy, controlled substances were ordered by Internet pharmacy customers who logged onto one or more websites sponsored by defendant, Medical Web Services (hereafter "MWS"). The Internet pharmacy customers selected and then prepaid for Schedule III and Schedule IV controlled substances on-line using credit or debit cards. Among these customers were individuals residing in the Northern District of Iowa. Once the customers' payments were verified, the controlled substance orders were sent to participating physicians for review. The physicians authorized the controlled substance orders and an electronic signature was attached to the "prescription" order and downloaded by a participating pharmacy. Pharmacies throughout the United States filled "prescriptions" for MWS, including in the Northern District of Iowa. Union Family Pharmacy, located in Dubuque, Iowa, was among the participating pharmacies who filled these prescriptions. Defendant allowed physicians to authorize the Schedule III and Schedule IV controlled substance "prescriptions" for customers who were not in the same state in which the physician was licensed. The pharmacies contracting with defendant filled orders for out of state customers, including customers in the Northern District of Iowa. Physicians and pharmacists employed by MWS, were paid by MWS. The payments by MWS constituted the proceeds of the conspiracy's unlawful activities. Most of these payments were conducted through weekly or bi-weekly wire transfers.

C.  The websites operated by, hosted by, or routed to, MWS allowed individuals to obtain Schedule III and IV controlled substances and other prescription drugs over the Internet without ever seeing a physician. Customers would log onto the Internet, using whatever name they chose, and would answer a "questionnaire" on the Internet regarding the drug they desired to obtain. In some circumstances, default answers would be provided to the customer, which would give them the answer needed to obtain the drug desired. Customer questionnaires would be bundled on the website, and contract physicians could then review and authorize the "prescriptions." The doctor's "signature" on the "prescription" was in fact a separate ".pdf" document placed on the prescription form by defendant's employees via computer. The physician would not produce an original prescription in any form. Upon authorization, the web server company, which was not a DEA registrant, would create a document which appeared to be a prescription. The entire purported prescription was then

saved as a single document in ".pdf" format and was then placed on the web server and made available to download by a pharmacy. An individual customer's "prescriptions" could be downloaded to different pharmacies on different occasions. The purported prescriptions downloaded from the Internet were not lawful prescriptions under federal law.

D. Medical Web Services was a corporation formed and operated by four equal share partners and officers: Luis Teran, Brian Podolak, Chris HoSang, and Thomas Mouradian. All decisions regarding MWS's operation were made jointly by the four corporate officers. MWS began operating its Internet pharmacy websites in June 2002. Between June 2002 and May 2004, at least 175 websites were linked to MWS. These websites funneled customers to MWS. The linked websites were run by "affiliates" of MWS, who were paid by MWS based upon the total number of sales transactions completed through their hosted websites. MWS employed some physicians directly, and others through recruiters who found doctors and funneled them to MWS to review drug orders. These recruiters were paid by MWS. The recruiters, in turn, paid the physicians they had recruited. Among these recruiters were: (1) former police officers J.G. and C.G., who operated I.N.M. and B.G.C.; (2) R.B., who operated U.T.I; (3) M.M., who ran M.D.S.; (4) A.D. and Rene Guerra, who ran Sunrise Integrated Services; (5) and Iric Spears, who operated Malvenia International. Among the physicians who were employed directly, or through these recruiters, for MWS approving Internet drug orders placed through MWS affiliated-websites were the following: (1) Ranvir Ahlawat; (2) Abu A; (3) Stephen Ancier; (4) David Baron; (5) James B; (6) Jose Crespin; (7) Antonio D-M; (8) Joseph D; (9) Hannibal Edwards; (10) Juan Gonzalez; (11) Carlos G-P; (12) Rene Guerra; (13) Luis H; (14) Harvey K; (15) Steven Klinman; (16) Robert L; (17) Fernando L-I; (18) Ramon L; (19) Michael Millette; (20) Phillip M; (21) Roger O; (22) Blanca P; (23) Lorenzo R; (24) Felix Rodriguez-Schmidt; (25) Alexis Roman-Torres; (26) George R; (27) Edward Schwab; (28) Shreelal S; (29) Don S; (30) Joel T; (31) Kimberly Trever; and (32) David Webb. MWS had customers in all 50 states, as well as Washington D.C., and Puerto Rico.

E. Over the course of its 23-month operation, MWS caused the distribution of at least 3,719,310 Schedule III dosage units, 8,883,390 Schedule IV dosage units, and 4,596,545 legend drug dosage units. These distributions involved more than 39,000 separate Schedule III "prescriptions," more than 136,000 separate Schedule IV "prescriptions,"

and 66,000 separate legend drug "prescriptions." From these drug sales, MWS generated $41,446,434.81 in gross proceeds.

F. None of the physicians working for MWS, directly or through recruiters, ever examined any Internet customer associated with the 241,000 plus "prescriptions" that were authorized. Nor were MWS's customers required to submit medical records, nor proof of their identity, as part of the ordering process. Some of the doctors affiliated with MWS required MWS customers to submit medical records, but most did not. Defendant did not ensure the physicians employed directly or indirectly through it established a legitimate medical relationship with any of the Internet customers, nor did defendant ensure the "prescribing" done by the physicians was done the usual course of medical practice. Rather, as long as the customer gave valid credit card information, there was nothing built into the MWS database that would exclude that customers' drug order, nor anything that verified the customers were over the age of 21, or were who they claimed to be. While it was the responsibility of the physicians and pharmacists employed by MWS to ensure any prescription authorized was based upon a legitimate medical need and was authorized only within the usual course of medical practice, MWS was wilfully blind and/or deliberately ignorant regarding the doctors' and pharmacists' actions. Based on the location of the physicians and customers, and the speed with which the physicians reviewed the questionnaires, defendant knew or should have known the physicians and pharmacists employed directly and indirectly through it were dispensing and causing to be dispensed controlled substances without a legitimate medical need and outside the usual course of professional practice.

G. In about August 2002, around two months after it began operating its Internet pharmacy websites, defendant hired a large well-known law firm to consult with it regarding the legality of its operation. The law firm assigned attorney M.C. as the primary contact for MWS's legal needs. The firm purported M.C. to be an experienced health care attorney who also had other Internet pharmacy clients. M.C. discussed MWS's operation with MWS's corporate officers, and logged onto MWS's websites to review MWS's business operation. After these conversations and review of the website, M.C. issued an opinion letter informing MWS its operation appeared to comply with the various state and federal regulations. M.C. did suggest some changes to MWS's physician and pharmacy contracts, and to the website and questionnaire content being used by MWS. These changes were implemented. Upon advice from M.C., MWS also implemented a system whereby the physicians employed by MWS were paid for reviewing the drug order questionnaires, regardless

of whether a particular drug request was approved or denied. MWS also consulted with M.C. at regular intervals regarding complaints from attorneys, drug manufacturers, and doctors about MWS's operation. Based upon M.C.'s advice, MWS ceased its affiliation with some doctors and stopped its use of some registered trademark drug names on its affiliated websites. In consultation with M.C., MWS also created an "86 List," which banned certain abusive customers from purchasing drugs through MWS.

H.   M.C. provided voluminous materials to MWS outlining relevant special regulations in each state, periodically reviewed changing state and federal regulations, and made recommendations to maintain compliance with changing laws. MWS also asked M.C. whether it should sell hydrocodone and Xanax-like psychiatric products. M.C. advised MWS that Hydrocodone and Xanax were highly regulated and that liability for offering these substances lay with doctors and pharmacists, and that dealing with those closely monitored medications increased MWS's publicity and corresponding liability. MWS discontinued the sale of hydrocodone based upon this advice. MWS chose not to discontinue the sale of Xanax, and failed to inform M.C. that its sales of Xanax continued until its operation was shut down in May 2004. MWS did not share, despite requests for the information from M.C., the names and locations of doctors and pharmacies employed by MWS. MWS declined to provide this information based upon concerns that M.C. may use the information to MWS's disadvantage in connection with his representation of other Internet pharmacies. Because MWS failed to share this information, M.C. was not aware many of MWS's affiliated doctors were in Puerto Rico, did not know these doctors did not speak English, and did not know the extent of the geographic relationships between the doctors, pharmacists, and drug customers. Had M.C. been aware of this information, the advice provided may have been different.

I.   At no time did the attorneys hired by MWS provide legal advice to any of the physicians or pharmacists employed directly or indirectly through MWS, nor was the advice the attorneys provided passed on to the physicians or pharmacists employed directly or indirectly through MWS.

J.   The physicians made the determination on whether or not to write the prescription based on the information he/she had received and the pharmacy made the determination whether or not to fill the prescription. Neither MWS nor any of its officers made these decisions

K.     MWS paid the law firm nearly $1,000,000 for the legal advice provided to it.

## ACKNOWLEDGMENT OF DEFENDANT'S UNDERSTANDING

26. _____ Defendant acknowledges that it has read each of the provisions of this entire plea agreement with the assistance of counsel and understands its provisions. Defendant has discussed the case and defendant's constitutional and other rights with its attorney. Defendant understands that by entering a plea of guilty it will be giving up its right to plead not guilty; to trial by jury; to confront, cross-examine and compel the attendance of witnesses; to present evidence in its defense; to remain silent and refuse to be a witness against itself by asserting privilege against self-incrimination and to be presumed innocent until proven guilty beyond a reasonable doubt. Defendant agrees that its attorney has represented it in a competent manner and has no complaints about that lawyer's representation. Defendant states that none of the MWS Officers are now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, whether prescribed by a physician or not, which would impair their ability to fully understand the terms and conditions of this plea agreement.

27. _____ Defendant acknowledges that it is entering into this plea agreement and is pleading guilty freely and voluntarily because it is guilty and for no other reason. Defendant further acknowledges that it is entering into this agreement without reliance upon any discussions between the government and it (other than those specifically described in this plea agreement), without promise of benefit of any kind (other than any matters contained in this plea agreement) and without threats, force, intimidation, or coercion of any kind. Defendant further acknowledges its understanding of the nature of each offense to which it is pleading guilty, including the penalties provided by law.

28. _____ Defendant further understands that it will be adjudicated guilty of each offense to which it will plead guilty and may thereby be deprived of certain rights. Defendant understands that the government reserves the right to notify any state or federal agency by whom it is licensed, or with whom it does business, of the fact of its conviction.

## VERIFICATION

29. _____ This letter constitutes the entire agreement between the parties. No other promises of any kind, express or implied, have been made to defendant by the United States or its agents. No additional agreement may be entered into unless in writing and signed by all parties. The agreement will not be deemed to be valid unless and until all signatures appear where indicated below.

  If this agreement is acceptable, please have the MWS Officers indicate their acceptance by placing their initials on the line preceding each of the above paragraphs and by signing below where indicated. By initialing each paragraph and signing below, defendant acknowledges that they have read, fully understand, and agree to each paragraph of this agreement. Please return all enclosures, completed and signed, with this signed letter to the U.S. Attorney's Office.

  Finally, please remember to pay the special assessment, as agreed above, directly to the Clerk of Court. That payment must be remitted to the Clerk before this agreement is returned to our office.

  Thank you for your cooperation.

Sincerely,

MATT M. DUMMERMUTH
United States Attorney

By, s/Stephanie M. Rose

STEPHANIE M. ROSE
Assistant United States Attorney

The undersigned defendant, through its officers, with advice of counsel, accepts the terms of this plea agreement. The undersigned Assistant United States Attorney accepts the terms of the executed plea agreement.

| | |
|---|---|
| _____ Date<br>LUIS TERAN<br>Officer of Medical Web Services | _____ 5/5/09 Date<br>STEPHANIE M. ROSE<br>Assistant United States Attorney |
| _____ Date<br>BRIAN PODOLAK<br>Officer of Medical Web Services | _____ 1-16-09 Date<br>LEON F. SPIES<br>Attorney for Defendant |
| _____ 01-13-2009 Date<br>THOMAS MOURADIAN<br>Officer of Medical Web Services | |

_____ Date
CHRISTOPHER HOSANG
Officer of Medical Web Services

If this agreement is acceptable, please have the MWS Officers indicate their acceptance by placing their initials on the line preceding each of the above paragraphs and by signing below where indicated. By initialing each paragraph and signing below, defendant acknowledges that they have read, fully understand, and agree to each paragraph of this agreement. Please return all enclosures, completed and signed, with this signed letter to the U.S. Attorney's Office.

Finally, please remember to pay the special assessment, as agreed above, directly to the Clerk of Court. That payment must be remitted to the Clerk before this agreement is returned to our office.

Thank you for your cooperation.

Sincerely,

MATT M. DUMMERMUTH
United States Attorney

By, s/Stephanie M. Rose

STEPHANIE M. ROSE
Assistant United States Attorney

The undersigned defendant, through its officers, with advice of counsel, accepts the terms of this plea agreement. The undersigned Assistant United States Attorney accepts the terms of the executed plea agreement.

_____  1/14/09
LUIS TERAN                      Date
Officer of Medical Web Services

_____  5/5/09
STEPHANIE M. ROSE          Date
Assistant United States Attorney

_____  Date
BRIAN PODOLAK
Officer of Medical Web Services

_____  1-16-09
LEON F. SPIES                   Date
Attorney for Defendant

_____  Date
THOMAS MOURADIAN
Officer of Medical Web Services

_____  Date
CHRISTOPHER HOSANG
Officer of Medical Web Services

If this agreement is acceptable, please have the MWS Officers indicate their acceptance by placing their initials on the line preceding each of the above paragraphs and by signing below where indicated. By initialing each paragraph and signing below, defendant acknowledges that they have read, fully understand, and agree to each paragraph of this agreement. Please return all enclosures, completed and signed, with this signed letter to the U.S. Attorney's Office.

Finally, please remember to pay the special assessment, as agreed above, directly to the Clerk of Court. That payment must be remitted to the Clerk before this agreement is returned to our office.

Thank you for your cooperation.

Sincerely,

MATT M. DUMMERMUTH
United States Attorney

By, s/ Stephanie M. Rose

STEPHANIE M. ROSE
Assistant United States Attorney

The undersigned defendant, through its officers, with advice of counsel, accepts the terms of this plea agreement. The undersigned Assistant United States Attorney accepts the terms of the executed plea agreement.

LUIS TERAN                     Date
Officer of Medical Web Services

BRIAN PODOLAK                  Date
Officer of Medical Web Services

THOMAS MOURADIAN      Date
Officer of Medical Web Services

STEPHANIE M. ROSE          Date   5/5/09
Assistant United States Attorney

LEON F. SPIES               Date   3-1-09
Attorney for Defendant

If this agreement is acceptable, please have the MWS Officers indicate their acceptance by placing their initials on the line preceding each of the above paragraphs and by signing below where indicated. By initialing each paragraph and signing below, defendant acknowledges that they have read, fully understand, and agree to each paragraph of this agreement. Please return all enclosures, completed and signed, with this signed letter to the U.S. Attorney's Office.

Finally, please remember to pay the special assessment, as agreed above, directly to the Clerk of Court. That payment must be remitted to the Clerk before this agreement is returned to our office.

Thank you for your cooperation.

Sincerely,

MATT M. DUMMERMUTH
United States Attorney

By, s/ Stephanie M. Rose

STEPHANIE M. ROSE
Assistant United States Attorney

The undersigned defendant, through its officers, with advice of counsel, accepts the terms of this plea agreement. The undersigned Assistant United States Attorney accepts the terms of the executed plea agreement.

_____          _Stephanie Rose__ 5/5/09
LUIS TERAN                   Date          STEPHANIE M. ROSE          Date
Officer of Medical Web Services            Assistant United States Attorney

                                           _____ 1-16-09
_____          LEON F. SPIES              Date
BRIAN PODOLAK                Date          Attorney for Defendant
Officer of Medical Web Services


_____
THOMAS MOURADIAN             Date
Officer of Medical Web Services

_____ 1|15|09
CHRISTOPHER HOSANG           Date
Officer of Medical Web Services